IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MIDLAND NATIONAL LIFE INSURANCE
COMPANY,

               *Plaintiff*,

    v.

CLARA OXLEY RIVAS, *et al*.,

             *Defendants*.

CIVIL ACTION
NO. 16-04712

**PAPPERT, J.**                                                                              December 9, 2016

**<u>MEMORANDUM</u>**

      Plaintiff Midland National Life Insurance Company insured the life of Arthur F. Faber, who died on January 18, 2013. In this lawsuit, Midland contends that Faber's life insurance Certificate[1] was null and void as the result of false responses in his application and/or that his coverage under the policy never became effective due to unfulfilled conditions precedent. To the extent the policy is effective, Midland is concerned that three individuals, Defendants Clara Oxley Rivas, Charles Faber and Calvin Clidy, may all attempt to claim the $100,000.00 death benefit. Midland seeks a judgment declaring that the Certificate is rescinded and the beneficiar(ies) are therefore not entitled to the death benefit, but rather only to a refund of the premiums paid and accrued interest, which totaled $3,902.08 as of August 30, 3016.

      Midland also seeks a judgment in interpleader against Rivas, Faber and Clidy and has accordingly filed a motion pursuant to 28 U.S.C. § 1335(a)(1) and F.R.C.P. 67(a) seeking leave

---

[1]     Certificates of insurance are often issued to the designated certificate holder as proof that the named insured has insurance. Generally, a certificate of insurance is not considered to be a part of the insurance contract; it is merely evidence of the insurance. 3 Couch on Ins. § 40:31. While Midland refers throughout its papers to the Certificate, the Court where appropriate uses the term policy as well.

1

to deposit with the Court the premiums and interest, to be distributed to whomever the Court subsequently determines is the proper claimant.  Midland also requests a court order pursuant to the interpleader declaring that Midland has no further liability to Defendants for claims arising out of the policy, excusing Midland from the litigation and awarding reimbursement for its court costs in connection with the interpleader action.  For the reasons that follow, the Court denies the motion to deposit funds without prejudice and grants Midland 30 days to file an amended complaint and a motion to deposit funds consistent with the requirements discussed below.

## I.

Arthur Faber applied for a life insurance policy with Midland in 2011.  (Pl.'s Compl., ¶ 10.)  There were two parts to the application.  On Part I, Faber answered "No" to questions seeking, *inter alia*, whether he (a) had been diagnosed with or treated for any mental or physical disorder or medically treated condition that was not listed, (b) had received treatment for alcoholism in the past or been advised to do so, (c) had sought medical treatment or undergone certain diagnostic tests (such as X-rays) in the previous twelve months or had future plans to do so, (d) had received certain advice or instructions from a medical professional in the previous twelve months, and (e) was currently taking any medications.  (*Id.* ¶¶ 11–18.)  Faber signed Part I of the application on August 26, 2011, certifying that his answers were complete and true to the best of his knowledge and that he agreed to immediately advise Midland of any changes to his responses, including any changes in his health or habits, that arose or were discovered before the Certificate became effective.  (*Id.* ¶ 19.)  The application contained a clause stating that any insurance issued as a result of the application would either (1) not take effect until the full first premium was paid and the contract was delivered to and accepted by the owner "during the lifetime of any person proposed for insurance and while such person is in the state of health

described in all parts of this application" or (2) take effect only as specified in the Temporary Insurance Agreement, if issued. (*Id.*)

On Part II of the application, which Faber completed on October 8, 2011, he answered the same questions listed above, among others. (*Id.* ¶¶ 20–26.) Midland alleges that Faber failed to notify it of several changes to his health that arose between the time he completed Parts I and II of his application and the time Midland issued him the Certificate on December 9, 2011. (*Id.* ¶ 28.) For one, while Faber answered "no" to the question asking whether he was taking any medications in Part I of his application, (*id.* ¶¶ 17–18), he answered "yes" to the same question in Part II and wrote that he was taking a specific prescription medication for a condition he had been diagnosed with two weeks earlier, (*id.* ¶¶ 25–26). Midland further alleges that Faber visited the emergency department of Jefferson University Hospital on November 19–20, 2011, where he received treatment for a condition other than one he had previously identified, submitted to diagnostic testing and had X-rays taken and was prescribed medication other than that which he had listed before. (*Id.* ¶ 27.) Midland alleges that Faber did not notify it of any of these changes.

After Faber's death, Clara Oxley Rivas, who was identified as the primary beneficiary on Faber's application for the policy, submitted a claim for the $100,000 death benefit. (*Id.* ¶¶ 5, 31.) Because Faber died within two years after the Certificate was issued, Midland conducted a standard review of his health history and the responses in his application. (*Id.* ¶ 32.) During its review, Midland allegedly discovered that two of Faber's responses, stating that he had not received treatment for alcoholism or been advised to do so, were false at the time given. (*Id.* ¶ 33.) Midland also allegedly discovered that several of Faber's responses were false at the time the Certificate was delivered to Faber, namely those related to conditions for which he had received treatment, diagnostic testing he had undergone, advice he had received in the previous

3

twelve months and medication he was taking.  (*Id.* ¶ 33.)  Midland claims that Faber made the false statements and representations knowingly, in bad faith and with intent to deceive Midland. (*Id.* ¶ 36.)  Midland further alleges that the fraudulent statements affected Midland's acceptance of the risk and hazard it assumed under the policy and it would have declined Faber's application for life insurance had he truthfully disclosed the facts required by the application.  (*Id.* ¶ 37.)

## II.

"The equitable remedy of interpleader allows a person holding property to join in a single suit two or more persons asserting claims to that property."  *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007) (quoting *NY Life Distrib., Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 372 n.1 (3d Cir. 1995)).  The purpose of interpleader is to relieve an obligor from the vexation of multiple claims in connection with a liability admittedly owed.  *Phoenix Ins. Co. v. Small*, 307 F.R.D. 426, 434–35 (E.D. Pa. 2015) (citing *Francis I. du Pont & Co. v. Sheen*, 324 F.2d 3, 4 (3d Cir. 1963)).  In such an action, a stakeholder may file suit, deposit a sum certain with the court, and then withdraw from the proceedings, leaving the competing claimants to litigate amongst themselves.  *Phoenix*, 307 F.R.D. at 434 (citing *Allstate Settlement Corp. v. United States*, No. 07-5123, 2008 WL 2221897, at *3 (E.D. Pa. May 28, 2008)).  Section 1335 requires the existence of five elements before interpleader relief is appropriate: (1) the interpleader action must be brought by a stakeholder who has "custody or possession" of the funds to be distributed; (2) the action must concern the minimal jurisdictional amount of $500; (3) there must be two or more adverse claimants asserting a right to the fund; (4) the adverse claimants must be of diverse citizenship as defined in 28 U.S.C. § 1332; and (5) the full amount disputed must be deposited in the court registry or a bond given made payable to the clerk of courts in the appropriate amount. *Aetna, Inc. v. Jones*, No. 06-2245, 2007 WL 266423, at *3 (E.D. Pa. Jan. 24, 2007) (citing *New*

*York Life Distrib., Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 374 (3d Cir. 1995); *Bankers Trust Co. of W. N.Y. v. Crawford*, 559 F. Supp. 1359, 1361 (W.D.N.Y. 1983)). Here, the first two elements are satisfied since Midland has possession of the funds to be distributed and the amount in question exceeds $500.

The third "prerequisite to bringing an action in interpleader is that there be two or more claimants to the fund who are 'adverse' to each other." *Allstate Settlement Corp.*, 2008 WL 2221897, at *3 (citations omitted). Claimants are adverse if they are claiming or may claim the same fund, and interpleader jurisdiction is not dependent on the merits of the respective underlying claims. *Bierman v. Marcus*, 246 F.2d 200, 202 (3d Cir. 1957); *see also Aetna*, 2007 WL 266423, at *3. Thus, a plaintiff can maintain the action even though he believes that one of the claims is valid and the other, or others, without merit. *Bierman*, 246 F.2d at 202 (collecting cases). "On the other hand, that which is advanced as an adverse claim may be so wanting in substance that interpleader under the statute may not be justified." *Id.* While the plaintiff stakeholder is "not obliged at his peril to determine which claimant has the better claim, he must have some real and reasonable fear of exposure to double liability or the vexation of conflicting claims to justify interpleader" and "[h]is bona fide purpose must be to rid himself of this vexation and the expense of resisting conflicting claims." *Id.* Put differently, the requirement that claimants be adverse is not met where (a) one of the claims clearly is devoid of substance; (b) one of the claimants is under the control of the stakeholder or has dropped his claim, such that the fear of multiple liability is baseless; or (c) the claims are not asserted against the same fund, or the stakeholder may be liable to both claimants. *Allstate Settlement Corp.*, 2008 WL 2221897, at *3 (quoting 7 Wright, Miller & Kane § 1705, at 508–09).

Due to uncertainty regarding the validity and legal effect of a "Beneficiary Change Request" form that was purportedly completed shortly before Mr. Faber's death, Midland alleges that all three of the Defendants have potential claims to the funds owed by Midland in connection with the policy. (Pl.'s Compl. ¶ 53.) In his 2011 application, Faber designated Rivas as the primary beneficiary. (*Id.* ¶ 49.) On January 17, 2013, however, Clidy, a friend of Faber acting pursuant to the power of attorney granted to him by Faber, executed a Beneficiary Change Request Form which purported to remove Rivas as the beneficiary and designate Charles Faber ("Charles") and Clidy himself as the new beneficiaries, each entitled to 50% of the policy's benefits. (*Id.* ¶ 50.) At that time, Pennsylvania law prohibited an individual serving as the authorized power of attorney for a principal from "designat[ing] himself beneficiary of a life insurance policy [on the principal's life] unless the agent is the spouse, child, grandchild, parent, brother or sister of the principal." 20 Pa. Cons. Stat. § 5603(p)(3).[2] Midland thus believes that Clidy's designation of himself as a beneficiary is invalid. (Pl.'s Compl. ¶ 51.) Midland also contends that "[i]t is unclear under Pennsylvania law whether Clidy's designation of Charles as a beneficiary of the Certificate was valid, nor is it clear whether Clidy's removal of Rivas as a beneficiary was valid." (Pl.'s Compl., ¶ 52.) Midland asserts that because Rivas' potential claim conflicts with the potential claims of Charles and Clidy, they are adverse. Because a genuine question exists as to whether Clidy's execution of the Beneficiary Change Request Form effectively removed Rivas as beneficiary and/or replaced her with Charles (and/or Clidy), the claimants are adverse and pose a risk of conflicting claims.

---

[2] This version of the statute, which became effective December 27, 2010, was later amended to omit the quoted language, effective January 1, 2015. Despite its omission of the particular language quoted, the amended version still maintains the limitation that, unless that power of attorney provides otherwise, an agent that is not an ancestor, spouse or descendant of the principal may not designate himself as beneficiary. 20 Pa. Cons. Stat. § 5601.4(b).

The fourth element is that the adverse claimants be of diverse citizenship as defined in 28 U.S.C. § 1332, which requires "minimal diversity," that is, "diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530–31 (1967); *see also CNA Ins. Cos. v. Waters*, 926 F.2d 247, 250 (3d Cir. 1991); *Domus, Inc. v. Davis-Giovinazzo Const. Co., Inc.*, No. 10-1654, 2010 WL 3282983, at *1 (E.D. Pa. Aug. 19, 2010); 7 Wright & Miller, *Federal Practice & Procedure,* § 1710 (3d ed. 2014). In its complaint, Midland states "on information and belief" that Rivas and Charles are citizens of Colorado and Clidy is a citizen of Pennsylvania. (Pl.'s Compl. ¶¶ 5–7.) Rivas and Charles, though certainly adverse since the yet-unresolved legal effect of the Beneficiary Change Request Form will determine who between them is the proper beneficiary, are thus not of diverse citizenship. Charles and Clidy, though certainly of diverse citizenship, are not adverse under the standards discussed above because even if Clidy's claim were deemed valid, Midland would be liable to both Charles and Clidy. *See Allstate Settlement Corp.*, 2008 WL 2221897, at *3.

The minimal diversity requirement is accordingly only satisfied if Clidy is considered adverse to Rivas. If both were to assert claims, their claims would conflict. The issue facing the Court, however, is whether Midland's assertion that Clidy has a potential adverse claim is "so wanting in substance that interpleader under the statute may not be justified." *Bierman*, 246 F.2d at 202. It is not. Midland believes that Clidy's designation of himself as a beneficiary is invalidated by the referenced Pennsylvania statute. (Pl.'s Compl., ¶ 51.) As stated above, however, jurisdiction is generally not dependent on the merits of the underlying claims and Midland can maintain the action even though it believes that one of the claims is valid and another is without merit. *Bierman*, 246 F.2d at 202 (collecting cases). The claimants' status as

adverse does not depend on whether the potential claimants are likely to succeed on the merits, but on whether Midland has a real and reasonable fear of exposure to double liability, *i.e.* whether Midland "believe[s] or assert[s] in good faith that there [is] danger of [Clidy] claiming the unpaid purchase money." *Id.* at 203.

Midland contends it is "unable to pay its admitted liability without exposing itself to multiple litigation, multiple liability, or both." (*Id.* ¶ 53.) Moreover, this belief seems reasonable in light of Clidy's answer to Midland's complaint, in which he asserts that "[t]here is a lack of rival claims; the decedent's life insurance policy was effectively changed prior to his death." (Clidy's Answer, at 9, ECF No. 11.) Clidy thus appears unconvinced that his execution of the form was invalid under the Pennsylvania statute and is poised to litigate its validity. Moreover, although at first glance the statute seems to counsel a straightforward result—the invalidation of Clidy's change of beneficiary due to his lack of the requisite familial relationship to Faber—Clidy's claim may not actually be so obviously meritless. *See Prudential Ins. Co. of Am. v. Eisen*, No. 11-05872, 2012 WL 876747, at *9 n.10 (E.D. Pa. Mar. 15, 2012) (finding the statutory limitation inapplicable because the insured had signed the document purporting to change the policy beneficiary, which may or may not be the case here). In sum, Clidy's potential claim is not "so devoid of substance" to make Midlands's belief that he will attempt to claim the funds unreasonable, and Clidy's answer to this suit asserting that the beneficiary change was effective further supports Midland's belief that paying another party would result in Clidy bringing a claim against it. Rivas and Clidy are thus sufficiently adverse and, because they are also of diverse citizenship, the minimal diversity requirement under § 1332 is met notwithstanding the lack of diversity between Rivas and Charles.

Finally, for interpleader relief to be ordered, the full amount disputed must be deposited into the court registry. Once an interpleader plaintiff pays the full amount disputed into the court's registry, and the claimants to that *res* have been given notice and opportunity to be heard and ordered to interplead, "the law normally regards the plaintiff as having discharged its full responsibility." *Phoenix*, 307 F.R.D. at 435 (citing *Sheen*, 324 F.2d at 5). At this point, a plaintiff acting in good faith is typically entitled to be discharged from the litigation and protected from further liability arising out of any claims to the funds at issue. *Phoenix*, 307 F.R.D. at 435 (citing, *e.g.*, *Wells Fargo Bank, N.A. v. ESM Fund I, LP*, 785 F. Supp. 2d 188, 198 (S.D.N.Y. 2011)).

Midland has placed the amount it owes in dispute. The death benefit payable under the policy is $100,000.00. Midland disputes the validity of the Certificate and, pursuant to its theory that the Certificate is either null and void or coverage never became effective, admits liability only for $3,902.08, the amount of premiums paid under the policy plus interest. The plaintiff's contesting liability, completely or partially, does not defeat an interpleader action under § 1335. *Leech*, 326 F. Supp. at 600. Where the plaintiff desires to dispute the amount of his obligation, however, the plaintiff must pay into the court (or post bond for) the highest amount claimed to be due under the written instrument giving rise to the indebtedness. *See, e.g.*, *Mass. Mut. Life Ins. Co. v. Cent.-Penn Nat. Bank of Phila.*, 362 F. Supp. 1398, 1404 (E.D. Pa. 1973); *United Ben. Life Ins. Co. v. Leech*, 326 F. Supp. 598, 601 (E.D. Pa. 1971); *John Hancock Mut. Life Ins. Co. v. Yarrow*, 95 F. Supp. 185, 186 (E.D. Pa. 1951) (collecting cases). Along with depositing the largest amount in dispute, an interested plaintiff wishing to dispute liability must "plead that the amount is in dispute and that only a specified amount or none thereof is admitted to be due." *Yarrow*, 95 F. Supp. at 186; *see also Leech*, 326 F. Supp. at 601.

Here, because the amount in dispute is $100,000.00, interpleader is permissible only if Midland deposits or posts a bond for that amount. Midland cannot unilaterally presume, based on its belief that the Certificate should be rescinded, that the full amount in dispute is $3,902.08 and limit its deposit accordingly. The Court can thus neither grant Midland's motion to deposit its "admitted liability" of $3,902.08 nor grant the relief sought in Midland's complaint as it stands by ordering impleader based on a deposit of that amount. Midland can amend its complaint to reflect that the largest amount in dispute is $100,000 while making clear that it only admits liability for $3,902.08 and file a corresponding motion seeking leave to deposit the full amount.[3] *Leech*, 326 F. Supp. at 601; *Yarrow*, 95 F. Supp. at 186; 7 Wright & Miller, *Federal Practice & Procedure,* § 1716 (3d ed. 2014).

For the reasons discussed above, the Court denies Midland's Motion to Deposit Funds without prejudice and grants Midland 30 days to file a motion to deposit funds and an amended complaint consistent with the requirements discussed in this opinion.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[3] Should Midland decide to do so, the Court notes that although discharge of the plaintiff is usually warranted where an impleader is proper and the plaintiff acted in good faith, it is improper to dismiss an interested plaintiff that disputes the amount of liability. *See Phoenix*, 307 F.R.D. at 435 ("A party may not be dismissed if it maintains—even after depositing funds into the Registry of the Court—that it is not liable for the amount deposited." (citing *Crawford*, 559 F. Supp. at 1365)).